**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

SHELBY PATTERSON, *et al.*,          )
                                     )
              Plaintiffs,            )
                                     )
       v.                            )          No. 4:22-cv-01392-MTS
                                     )
BANK OF AMERICA, N.A., *et al.*,     )
                                     )
              Defendants.            )

**MEMORANDUM AND ORDER**

This matter comes before the Court on pre-service review of the amended complaint filed by plaintiffs Shelby Patterson and Kimberly Patterson-Bey. Doc. [5]. Based on that review, and for the reasons discussed below, the Court will direct the Clerk of Court to issue process on defendants Rushmore Loan Management, LLC and Bank of America, N.A. as to plaintiffs' claims under the Real Estate Settlement Procedures Act, the CARES Act, and the Missouri Merchandising Practices Act. However, the additional claims against Rushmore and Bank of America, as well as all other claims against all other defendants, will be dismissed without prejudice for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B).

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To avoid dismissal, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether

a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016); *see also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under 28 U.S.C. § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## Background

Plaintiffs are self-represented litigants who filed a civil action on December 30, 2022, titled "Complaint for Qui Tam, False Claims Act, Fraudulent [Forbearance] Loan Modification and Conveyance." Doc. [1]. The complaint named Bank of America, N.A., Rushmore Loan

Management, and the Metropolitan-Missouri Sanitary District as defendants. *Id.* at 1. With regard to jurisdiction, plaintiffs referred to the Missouri Rules of Evidence, the Illinois Rules of Evidence, Missouri negligence law, and the federal CARES Act. *Id.* at 2–3.

According to plaintiffs, their civil action was meant to quiet title to real property located at 1362 Reale Street, St. Louis, Missouri. *Id.* at 3. Plaintiffs stated that they were the true owners to this property, and acquired it in July of 2006. *Id.* at 4. At some point, Rushmore called plaintiffs, offering an eighteen-month forbearance during the pandemic, during which time plaintiffs could delay making mortgage payments. However, plaintiffs told Rushmore that they did not need forbearance and were current with their mortgage payments, and alleged that Rushmore made "false claims" and failed to inform them that their "mortgage was not under any of the federally backed programs that would [guarantee] a forbearance or loan modification."

As to the "false claims," plaintiffs asserted that Rushmore's forbearance comments were misleading because they were "working behind the scenes to move forward with foreclosure." *Id.* at 6. They also accused Rushmore of a variety of improprieties, including unjust enrichment, illegal fees, refusal to provide information, falsification of documents, robo-signing, delays, and "bait and switch forbearance." *Id.* at 5, 7–8. In short, it appeared that plaintiffs were alleging that Rushmore manipulated them into requesting a forbearance, that Rushmore sent them paperwork with different options, but that plaintiffs never had a signed agreement. *Id.* at 10. Thus, an arrears built up as plaintiffs missed payments, which then had to be paid back in a lump sum. This ultimately led to default and the risk of foreclosure. *Id.* at 12.

Concerning damages, plaintiffs sought "an amount in excess of $75,000." *Id.* at 23. However, the section of the complaint titled "General Damages" appeared taken from another lawsuit. In particular, plaintiffs stated they were seeking damages "for personal injuries," and

claimed to have incurred medical expenses, loss of earning capacity, and physical impairment, none of which related to their allegations.

Along with their complaint, plaintiffs submitted a motion for leave to proceed in forma pauperis. Doc. [2]. On March 14, 2023, the Court granted the motion. Doc. [4]. Because plaintiffs were proceeding in forma pauperis, their complaint was subject to pre-service review pursuant to 28 U.S.C. § 1915. Based on that review, the Court determined that plaintiffs' complaint was subject to dismissal for lack of subject matter jurisdiction, and for failure to comply with Federal Rule of Civil Procedure 8. *Id.* at 4–7.

Regarding subject matter jurisdiction, the Court explained that plaintiffs had not carried their burden of demonstrating that the CARES Act—cited as a jurisdictional basis—had any relevance to their case. *Id.* at 6. As such, the Court concluded that plaintiffs had not established federal question jurisdiction. *Id.* Concerning diversity jurisdiction, the Court noted that one of the plaintiffs shared citizenship with one of the defendants. *Id.*

The Court further determined that the complaint had not complied with Federal Rule of Civil Procedure 8, requiring "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* Instead of a short and plain statement, plaintiffs' complaint was long, repetitive, and difficult to follow. *Id.*

Rather than dismissing the action outright, the Court directed plaintiffs to file an amended complaint. *Id.* at 7. In the instructions provided to plaintiffs, the Court advised them that jurisdiction was a threshold requirement, that they carried the burden of proving jurisdiction, and that if they failed to carry this burden, the case would be dismissed. *Id.* at 8. The Court also instructed plaintiffs on how to structure their amended complaint, telling them to begin by writing

4

a defendant's name, and then presenting factual allegations in numbered paragraphs beneath that name. *Id.* at 9. Plaintiffs were given thirty days in which to comply. *Id.*

### The Amended Complaint

The Court received plaintiffs' amended complaint on April 12, 2023. Doc. [5]. The amended complaint is typewritten on a Court-provided form.  Within the complaint, plaintiffs identify ten separate defendants: (1) Rushmore Loan Management, LLC (Rushmore); (2) U.S. Bank National Association; (3) Bank of America, N.A. (BOA); (4) U.S. Bank National Association, as trustee; (5) U.S. Bank Trust National Association, as trustee; (6) U.S. Bank National Association, in any capacity; (7) SouthLaw, P.C.; (8) U.S. Bancorp Center; (9) Bank of America Corporate Center; and (10) the Saint Louis Metropolitan Sewer District.[1] Doc. [5]. at 1–2, 4–8. With regard to jurisdiction, plaintiffs assert federal question jurisdiction based on the False Claims Act, 31 U.S.C. §§ 3729–3730; the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605; the Missouri Foreclosure Prevention Act, Mo. Rev. Stat. §§ 443.701–443.893;[2] Mo. Rev. Stat. § 407.020;[3] Mo. Rev. Stat. § 506.020;[4] Mo. Rev. Stat. § 428.010;[5] and Mo. Rev. Stat. §

---

[1] The Court notes that seven defendants are listed in the case caption: Rushmore Loan Management, LLC; U.S. Bank National Association; Bank of America, N.A.; U.S. Bank National Association, as trustee; U.S. Bank Trust National Association, as trustee; U.S. Bank National Association, in any capacity; and SouthLaw, P.C. Doc. [5] at 1. Attached to the amended complaint is a page titled "Additional Lists of Defendants," in which plaintiffs name U.S. Bank National Association, as trustee; U.S. Bank Trust National Association, as trustee; and U.S. Bank National Association, in any capacity. All of these "additional" defendants were already listed in the caption. Beyond the defendants named in the caption, plaintiffs include additional defendants in "The Parties to this Complaint" section of the form complaint. Those additional defendants are U.S. Bancorp Center; Bank of America Corporate Center; the St. Louis Metropolitan Sewer District; Rushmore Loan Management, LLC; and U.S. Bank National Association. All told, and ignoring defendants that are listed twice, it appears that plaintiffs are suing ten different defendants.

[2] While plaintiffs refer to these sections as the "Foreclosure Prevention Act," the actual citation is to the "Missouri Secure and Fair Enforcement for Mortgage Licensing Act." *See* Mo. Rev. Stat. § 443.701.

[3] Mo. Rev. Stat. § 407.020 is part of the Missouri Merchandising Practices Act, and "prohibits deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale…of any merchandise." *See Huffman v. Credit Union of Texas*, 758 F.3d 963, 967 (8th Cir. 2014).

[4] Mo. Rev. Stat. § 506.020 is a section of the Civil Code of Missouri,  and provides that the code shall not apply to criminal practice.

[5] Mo. Rev. Stat. § 428.010 was repealed by L. 1986, H.B. No. 1410 § 1.

285.530.[6] *Id.* at 9. Plaintiffs also appear to indicate the presence of diversity jurisdiction. *Id.* at 10–17.

In the "Statement of Claim," plaintiffs assert they hold title and are the true owners of property located at 1362 Reale Avenue in Saint Louis, Missouri. *Id.* at 18. They acquired the property by warranty deed on July 31, 2006, by entering "into a promissory note" with BOA,[7] "the alleged original lender." *Id.* Plaintiffs state that BOA "serviced the loan until" Rushmore "allegedly committed mail fraud" by claiming "that they had a contractual agreement and rights to service the loan to a deed that they do not possess." *Id.*

According to plaintiffs, they received a phone call from Rushmore, in which Rushmore made "false claims" that they "needed a forbearance during the pandemic." They were allegedly advised that they would receive a "forbearance that would delay" their mortgage payments for eighteen months. *Id.* at 18–19. Plaintiffs insist that they "did not need a forbearance," that they were "current with [their] mortgage payments," and that they were not informed that their mortgage "was not under any of the federally backed programs that would guarantee a forbearance or loan modification." *Id.* at 19. Rather, Rushmore was offering "a private loan." *Id.*

Plaintiffs contend that they "did not receive what they intended to obtain" from this transaction, which resulted in "unjust enrichment" for BOA and Rushmore. *Id.* Somewhat confusingly, they state that they were "the [signatories] on the promissory note held by" BOA and Rushmore, but were "never asked to sign the promissory note." *Id.* As such, plaintiffs state that they "never agreed to pay the loan," and "were not unjustly enriched by Kimberly Patterson-Bey's absence of personal liability on the loan." *Id.*

---

[6] Mo. Rev. Stat. § 285.530 governs illegal immigration, and prohibits the employment of unauthorized aliens.
[7] Based on both plaintiff's original complaint and amended complaint, it appears that plaintiffs' use of "BOA" in the "Statement of Claim" refers to defendant Bank of America, N.A.

Apparently referring to a separate court proceeding, plaintiffs note "that the trial court's observation that there was evidence that defendant engaged in wrongful conduct . . . supplemented the trial court's finding that it was unjust for Defendant BOA to retain the benefit of the Rushmore servicing bank loan where plaintiffs never agreed to incur a personal obligation on the loan." *Id.* Plaintiffs further note that the "burden of proof in a reformation case is" on "the party seeking to reform an instrument," and that Rushmore "failed to meet its burden" of establishing "a right to reform a deed of trust by substituting the proper tract of real estate as the secured property." *Id.*

Again referring to a separate court proceeding, plaintiffs state that the "trial court found the signature of Shelby Patterson on the deed of trust to be a forgery," and assert that Rushmore "failed to establish a mutuality of mistake as to Shelby Patterson in connection with the deed of trust." *Id.* at 20. Even if Rushmore "established the elements of a reformation action," plaintiffs argue that they "did not consent to the imposition of a deed of trust on the entirety of the property." *Id.* They assert that Rushmore "failed to fulfill any regulations in place designed to protect" them, which resulted "in legal action against them." *Id.*

Plaintiffs further state that they "believe that" Rushmore "engaged in intentionally deceptive, dishonest, or misleading behavior, for which they should face criminal charges." *Id.* They claim that Rushmore misled them about mortgage forbearance, leading to foreclosure, and "misapplied payments that triggered late fees and penalties." *Id.* Plaintiffs further assert that Rushmore charges illegal fees, refuses to provide "necessary information for loan refinance" and loan payoffs, and "improperly [purchased] costly forced place insurance without properly informing plaintiffs of insurance requirements or potentially misleading them." *Id.* at 20–21. Plaintiffs also state Rushmore "may have engaged in falsifying documents," and "in robo-signing, with inexperienced and unqualified people rubber-stamping documents." *Id.* at 21.

According to plaintiffs, BOA and Rushmore "used various tactics, including consistent delays, to lure" them into a forbearance that lasted until May 2021. *Id.* They insist Rushmore "caused mass confusion during the pandemic and delayed providing assistance" to them, leading to missed payments. *Id.*

Plaintiffs accuse Rushmore of engaging in "bait and switch tactics," wherein Rushmore promised "traditional forbearance relief from mortgage payments but instead [offered] a stand-alone loan that is payable later." *Id.* at 22. More specifically, plaintiffs refer to the passage of the CARES Act, which had "provisions related to mortgage forbearance." *Id.* When Rushmore contacted plaintiffs, plaintiffs apparently believed they were entitled to a "traditional forbearance." *Id.* However, they contend that Rushmore "may" have used the words "federally related" to trick them, resulting in them agreeing "to a private forbearance agreement" that required them "to pay back the missed mortgage payments in a lump sum or over a shortened period of a few months." *Id.* at 22–23. Plaintiffs argue that they were "lured into thinking" they were "getting a traditional forbearance," but were "eventually told that the private lender's loss mitigation options are to sell the property." *Id.* at 23.

Plaintiffs contend that Rushmore contributed to confusion over the kind of mortgage relief they received. In particular, they state that the "confusion comes in thinking that there is enforcement behind the CARES Act[,] which in the majority of cases, there isn't." *Id.* Plaintiffs also assert Rushmore confused them "by letting the arrears build up." *Id.* Plaintiffs allege Rushmore "let missed payments accumulate for years at a time," that Rushmore phone representatives told them they were "in a forbearance," despite their being no signed agreement, and that Rushmore "sent paperwork with options without telling plaintiffs which options" they were "entitled to." *Id.*

In summary, plaintiffs argue "during the pandemic," they were "enticed, steered, and exploited" with the option of forbearance. *Id.* at 24. They received offers from Rushmore for "mortgage assistance," but insist this was a "trick," and that plaintiffs "never requested a forbearance but" were "manipulated into one." *Id.*

Based on these facts, plaintiffs seek $100,000 in actual damages under the Missouri Merchandising Practices Act, unspecified punitive damages under the Missouri Merchandising Practices Act, disgorgement of all profits by defendants, and treble damages under the False Claims Act. *Id.* at 25.

## Discussion

Plaintiffs are self-represented litigants who allege in their amended complaint they were coerced into entering a forbearance agreement that may ultimately lead to foreclosure. Because they are proceeding *in forma pauperis*, the Court reviewed their amended complaint under 28 U.S.C. § 1915. Based on that review, and for the reasons discussed below, the Court will direct the Clerk of Court to issue process on defendants Rushmore Loan Management, LLC and Bank of America, N.A. as to plaintiffs' claims under the Real Estate Settlement Procedures Act, the CARES Act, and the Missouri Merchandising Practices Act. However, the additional claims against Rushmore and Bank of America, as well as all other claims against all other defendants, will be dismissed without prejudice for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B).

### A. Claims Against U.S. Bank National Association; U.S. Bank National Association, as trustee; U.S. Bank Trust National Association, as trustee; U.S. Bank National Association, in any capacity; SouthLaw, P.C.; U.S. Bancorp Center; Bank of America Corporate Center; and the Saint Louis Metropolitan Sewer District

Plaintiffs identified ten separate defendants in this action. Only two defendants—BOA and Rushmore—are actually mentioned in the "Statement of Claim." The remaining eight defendants appear in the caption only, or in the section of the form complaint for identifying the parties.

As noted above, plaintiffs must demonstrate a plausible claim for relief in order to avoid dismissal. *See Ashcroft*, 556 U.S. at 679. To be facially plausible, plaintiffs must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. In other words, plaintiffs must "give the defendant fair notice of what [their] claim is and the ground upon which it rests." *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

In this case, there are no allegations whatsoever against the following defendants: U.S. Bank National Association; U.S. Bank National Association, as trustee; U.S. Bank Trust National Association, as trustee; U.S. Bank National Association, in any capacity; SouthLaw, P.C.; U.S. Bancorp Center; Bank of America Corporate Center; and the Saint Louis Metropolitan Sewer District. Plaintiffs merely list them in the case caption, or in the section of the form complaint for identifying the parties. This is not sufficient to allow the Court to draw a reasonable inference that these defendants are liable for wrongdoing, and it certainly fails to give these defendants fair notice as to the grounds upon which the claims rest. In short, simply identifying a party as a defendant is not enough to assert liability. *See Allen v. Purkett*, 5 F.3d 1151, 1153 (8th Cir. 1993) (agreeing with district court dismissal of two defendants who were named as defendants in the complaint, but who had no factual allegations made against them); and *Krych v. Hvass*, 83 Fed. Appx. 854, 855 (8th Cir. 2003) (agreeing with district court dismissal of defendants who were merely listed in the complaint, and who were not alleged to have been personally involved in the constitutional violations).

The Court further notes that plaintiffs were expressly warned in the Court's Order to Amend that they were required to comply with Federal Rule of Civil Procedure 8, which provides that plaintiffs must present "a short and plain statement of the claim showing that the pleader is

entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). Plaintiffs were also advised that their status as self-represented litigants did not excuse them from compliance. *See Ackra Direct Marketing Corp. v. Fingerhut Corp.*, 86 F.3d 852, 856 (8th Cir. 1996). Nonetheless, plaintiffs have not complied with this instruction, as they have failed to present a "short and plain" statement regarding these eight defendants. More to the point, Plaintiffs have not presented *any* statement at all as to why they are entitled to relief. Their failure to comply with Rule 8, even after being given an opportunity to amend, makes this action against these particular defendants subject to dismissal. *See Micklus v. Greer*, 705 F.2d 314, 317 n.3 (8th Cir. 1983). *See also Cody v. Loen*, 468 Fed. Appx. 644, 645 (8th Cir. 2012) (stating that a pro se litigant is not excused from Fed. R. Civ. P. 8, "which requires a short and plain statement showing the pleader is entitled to relief").

For all of these reasons, all claims against defendants U.S. Bank National Association, U.S. Bank National Association, as trustee, U.S. Bank Trust National Association, as trustee, U.S. Bank National Association, in any capacity, SouthLaw, P.C., U.S. Bancorp Center, Bank of America Corporate Center, and the Saint Louis Metropolitan Sewer District must be dismissed without prejudice for failure to state a claim.

**B. CARES Act Claims Against BOA and Rushmore**

In response to the global coronavirus pandemic, "Congress passed the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) to help individuals, families, businesses, and health-care providers cope with the economic and public health crises triggered by COVID-19."[8] *Brennan v. United States*, 2020 WL 3980001, at *1 (E.D. Ark. 2020). The CARES Act contains provisions designed to help struggling homeowners. For instance, the Act provided a temporary

---

[8] COVID-19 is the name of the disease caused by the novel coronavirus known as SARS-CoV-2, which originated in China, spread globally, and resulted in the declaration of a national emergency. *See* Pres. Proc. No. 9994, 85 Fed. Reg. 15337, 2020 WL 1272563 (Mar. 13, 2020); *see also Buljic v. Tyson Foods, Inc.*, 22 F.4th 730, 734 (8th Cir. 2021).

moratorium on eviction filings. *See* 15 U.S.C. § 9058. *See also Mossman v. United States Centers for Disease Control and Prevention*, 2021 WL 5498746, at *1 (N.D. Iowa 2021) ("Included in the CARES Act was a temporary moratorium on evictions from certain federally backed housing"). The CARES Act also allows borrowers with federally backed mortgage loans experiencing financial hardship due to COVID-19 to request forbearance. *See* 15 U.S.C. § 9056.

In this case, plaintiffs cite to the CARES Act in their "Statement of Claim," noting that it "includes provisions related to mortgage forbearance." They allege Rushmore used a "bait and switch tactic" to trick them into thinking they would get a traditional forbearance, when they were actually only entitled to a private forbearance agreement. Plaintiffs further assert Rushmore intended to confuse them, so that they would be able to foreclose, and used the CARES Act to effectuate this. With regard to BOA, they contend that BOA retained the benefit of Rushmore's servicing on the loan.

The Court must accept these allegations as true, and make all reasonable inferences in plaintiffs' favor. *See Jones v. Douglas Cty. Sheriff's Dep't*, 915 F.3d 498, 499 (8th Cir. 2019). Relevant here, when evaluating whether a self-represented plaintiff has asserted sufficient facts to state a claim, a *pro se* complaint, however inartfully pleaded, is held to less stringent standards than formal pleadings drafted by lawyers. *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014). The Court will therefore direct the Clerk of Court to issue process on defendants Rushmore and BOA as to plaintiffs' claims under the CARES Act. The Court cautions plaintiffs that this is only a preliminary determination and not a determination of the merits of their claims or defenses.

**C. False Claims Act Claims Against BOA and Rushmore**

The False Claims Act (FCA) was signed into law by President Abraham Lincoln "to rein in the rampant fraud of Civil War defense contractors." *Olson v. Fairview Health Services of*

*Minnesota*, 831 F.3d 1063, 1069 (8th Cir. 2016). It "imposes liability on any person who knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval." *United States ex rel. Costner v. United States*, 317 F.3d 883, 886 (8th Cir. 2003).

Additionally, the FCA makes it unlawful to knowingly make or use a false record or statement material to a false or fraudulent claim; to use a false record or statement to conceal or decrease an obligation to pay the United States; to make or deliver a document certifying receipt of property used by the government, with the intent to defraud the government; to knowingly receive or buy government property as a pledge of an obligation or debt; to knowingly use a false record or statement material to an obligation to pay or transmit money or property to the government; or to conspire to commit any of these violations. *See* 31 U.S.C. § 3729(a)(1). The FCA contains a *qui tam* provision that allows private persons to sue as relators representing the government's interests, and allowing relators who prevail a portion of the recovered damages. *See Minnesota Ass'n of Nurse Anesthetists v. Allina Health System Corp.*, 276 F.3d 1032, 1041–42 (8th Cir. 2002).

In this case, plaintiffs indicate that they are bringing claims under the FCA. There are no allegations, however, that either BOA or Rushmore made a false or fraudulent claim for payment to the United States government. Rather, plaintiffs facts suggest that Rushmore purportedly made false or fraudulent claims to them regarding a forbearance agreement. As such, plaintiffs have failed to demonstrate a plausible claim for relief under the FCA. Therefore, the FCA claims against BOA and Rushmore will be dismissed without prejudice.

**D. Real Estate Settlement Procedures Act Claims Against BOA and Rushmore**

The Real Estate Settlement Procedures Act (RESPA) is codified at 12 U.S.C. §§ 2601–2617. The purpose of RESPA is to provide "more effective advance disclosure to home buyers and sellers of settlement costs," to eliminate "kickbacks or referral fees," to reduce "the amounts home buyers are required to place in escrow accounts," and to reform and modernize "local recordkeeping of land title information." *See* 12 U.S.C. § 2601; *see also Watt v. GMAC Mortg. Corp.*, 457 F.3d 781, 783 (8th Cir. 2006) ("RESPA was intended to reform the real estate settlement or closing process to give consumers greater and more timely information on the nature and amount of settlement costs and to protect them from unnecessarily high settlement charges"); *Pacific Ins. Co. v. Burnet Title, Inc.*, 380 F.3d 1061, 1065 (8th Cir. 2004) ("Part of Congress's purpose in passing RESPA was to insure consumers were provided with greater and more timely information on the nature and costs of the settlement process"). To state a claim under RESPA, plaintiffs must allege the involvement of a federally related mortgage loan. *See Gardner v. First American Title Ins. Co.*, 294 F.3d 991, 993 (8th Cir. 2002).

In this case, plaintiffs specifically cite to 12 U.S.C. § 2605. Pursuant to 12 U.S.C. § 2605(e), RESPA imposes a duty upon service providers to respond to "qualified written requests." *Watt*, 457 F.3d at 783. That is, upon "receipt of a qualified written request, the servicer must, after conducting an investigation, provide a written explanation or clarification." *Wirtz v. Specialized Loan Servicing, LLC*, 886 F.3d 713, 717 (8th Cir. 2018). Section 2605 also "requires servicers of loans to make timely payments from an escrow account to pay taxes, insurance premiums, and other charges." *McWilliams v. Chase Home Finance, LLC*, 2010 WL 1817783, at *4 (E.D. Mo. 2010). In addition, § 2605 contains provisions regarding forced-place insurance, requiring servicers to have "a reasonable basis" for obtaining such insurance. 12 U.S.C. § 2605(k)(1)(A).

14

RESPA provides borrowers with a cause of action against a servicer that "fails to comply with any provision of this section." *See* 12 U.S.C. § 2605(f)(1).

Here, plaintiffs alleged Rushmore refused to provide them necessary information, including "loan payoff information." Doc. [5] at 21. Plaintiffs further assert Rushmore improperly purchased "costly forced place insurance," and did so without "properly informing them of insurance requirements." Pursuant to 12 U.S.C. § 2605(k), a servicer "shall not . . . obtain force-placed hazard insurance unless there is a reasonable basis." Plaintiffs contend this insurance contributed to them going into default. As to BOA, plaintiffs assert BOA used "various tactics, including consistent delays, to lure [them] into a forbearance." They also state BOA "claimed that [their] faxes and applications would be lost, packets would have to be redone and resubmitted, and promises were never put in writing."

The Court must accept these allegations as true, and make all reasonable inferences in plaintiffs' favor. *See Jones*, 915 F.3d at 499. As such, the Court will direct the Clerk of Court to issue process on defendants Rushmore and BOA as to plaintiffs' claims under RESPA. The Court cautions plaintiffs that this is only a preliminary determination based solely on the allegations contained in the complaint. This is not a determination of the merits of his claim or potential defenses thereto.

**E. State Law Claims Against BOA and Rushmore Under Mo. Rev. Stat. §§ 285.530, 428.010, and 506.020**

In their amended complaint, plaintiffs indicate that they are bringing claims under Mo. Rev. Stat. §§ 285.530, 428.010, and 506.020. They have not stated a claim against BOA or Rushmore under either of these three statutes.

With regard to Mo. Rev. Stat. § 285.530, this provision deals with illegal immigration, and prohibits the employment of unauthorized aliens. Plaintiffs have not demonstrated that they have

a private right of action under this statutory section, much less that BOA and Rushmore have knowingly employed, hired for employment, or continued "to employ an unauthorized alien to perform work within the state of Missouri."

As to Mo. Rev. Stat. § 428.010, this section has been repealed.[9] Therefore, plaintiffs cannot state a claim pursuant to it.

Finally, Mo. Rev. Stat. § 506.020 is part of the Civil Code of Missouri, and provides that the "code shall not apply to practice and procedure in criminal cases except to the extent that its provisions or any of them are now or hereafter may be made applicable by statute." It is unclear what relevance plaintiffs believe this has to their case. Regardless, plaintiffs have not stated a claim against BOA and Rushmore under this section, because it is a rule of civil procedure.

### F.   State Law Claims Against BOA and Rushmore Under the Missouri Secure and Fair Enforcement Mortgage Licensing Act

The Missouri Secure and Fair Enforcement Mortgage Licensing Act (SAFE Act) was enacted by the Missouri General Assembly in 2010 in response to 12 U.S.C. § 5107, which required states to put in place "a system for licensing and registering loan originators." *See Garozzo v. Missouri Dept. of Ins., Financial Institutions & Professional Registration, Division of Finance*, 389 S.W.3d 660, 662–63 (Mo. banc 2013); and 12 U.S.C. § 5107(a). It is codified at Mo. Rev. Stat. §§ 443.701–443.893. The SAFE Act states "no individual shall engage in the business of a mortgage loan originator without first obtaining and maintaining a license." *Garozzo*, 389 S.W.3d at 663. The Act also sets forth findings required for licensure. *See* Mo. Rev. Stat. § 443.713. Beyond that, the SAFE Act sets out a number of violations for persons subject to sections 443.701 to 443.893. *See* Mo. Rev. Stat. § 443.737. However, the supervision and enforcement of the SAFE Act is expressly given to the director of the division of finance. *See* Mo. Rev. Stat. §§ 443.703.1(6),

---

[9] Mo. Rev. Stat. § 428.010 was repealed by L. 1986, H.B. No. 1410 § 1.

443.729. *See also Garozzo*, 389 S.W.3d at 663 ("The division of finance is responsible for administering the law"). Penalties for violations can include criminal actions and civil penalties assessed by the director or board. *See* Mo. Rev. Stat. § 443.810.

In this case, plaintiffs indicate they are bringing a claim under the SAFE Act, which they refer to as the "Missouri Foreclosure Prevention Act." Plaintiffs have not, however, presented any allegations asserting that they have a private right of action under the Act, or that they are entitled to seek damages through its provisions.

The Court notes that there is no caselaw regarding whether the SAFE Act contains a private right of action. However, in Missouri, "[t]he creation of a private right of action by implication is not favored, and the trend is away from judicial inferences that a statute's violation is personally actionable." *See Moore v. Armed Forces Bank, N.A.*, 534 S.W.3d 323, 326 (Mo. Ct. App. 2017). *See also Neighbors Against Large Swine Operations v. Continental Grain Co.*, 901 S.W.2d 127, 130 (Mo. Ct. App. 1995) ("Missouri will permit the implication of a private right of action in only the narrowest circumstances").

As noted above, the SAFE Act does not explicitly provide for a private right of action, but does provide for a means of enforcement by the director of the division of finance. *See* Mo. Rev. Stat. §§ 443.703.1(6), 443.729. The Missouri Supreme Court has stated that when the legislature has established other means of enforcement, a private civil action will not be recognized "unless such appears by clear implication to have been the legislative intent." *Shqeir v. Equifax, Inc.*, 636 S.W.2d 944, 948 (Mo. banc 1982); *see also R.L. Nichols Ins., Inc. v. Home Ins. Co.*, 865 S.W.2d 665, 666–67 (Mo. banc 1993) (explaining that "when the legislature has established other means of enforcement rather than by a private cause of action, the courts will not recognize a private civil action unless it appears to be a clear implication that the legislature intended to create a private

cause of action"); *Elkins v. Academy I, LP*, 633 S.W.3d 529, 538 (Mo. Ct. App. 2021) ("In general, when a statute includes measures establishing enforcement of its provisions, courts will not recognize a private right of action for the violation of that statute, except where the statute indicates legislative intent to establish a private cause of action").

When a statute provides for its enforcement by someone other than a private party, the party must "show an additional plus factor which demonstrates a clear implication that the legislature, despite its silence, intended to allow private individuals to also enforce the" statute. *See Neighbors Against Large Swine Operations*, 901 S.W.2d at 131. The Missouri Supreme Court has indicated that membership in the class of persons the statute seeks to protect is not enough to provide a private right of action. *See Johnson v. Kraft General Foods, Inc.*, 885 S.W.2d 334, 336 (Mo. banc 1994) (stating that "the protected class theory . . . does not, standing alone, negate the implication of exclusivity created by the presence of an expressly stated means of enforcement"). Rather, the Missouri Supreme Court has suggested looking at the statute's primary purpose. *Id.* (explaining that even though child support statute afforded plaintiff direct benefits, "the primary purpose of the statute is obviously to protect the children who are entitled to child support payments"); *see also Shqeir*, 636 S.W.2d at 948 ("A private remedy will not be implied when it does not promote or accomplish the primary goals of the statute").

The primary purpose of the SAFE Act is to provide for the licensing of those engaged in the business of mortgage loan originator. The legislature passed the Act in response to a federal law requiring states to put in place "a system for licensing and registering loan originators." *See Garozzo*, 389 S.W.3d at 662–63. The title of the Act is the "Missouri Secure and Fair Enforcement Mortgage Licensing Act." *See* Mo. Rev. Stat. § 443.701. It provides that "[n]o individual…shall engage in the business of a mortgage loan originator concerning any dwelling located in Missouri

without first obtaining a license under sections 443.701 to 443.893 and obtaining employment and acting under the supervision of a single Missouri licensed residential mortgage broker." *See* Mo. Rev. Stat. § 443.706.1. Because the primary purpose of the SAFE Act is to license and register loan originators and ensure licensure compliance, there is no clear implication that the legislature intended to provide a private right of action.

To summarize, the SAFE Act explicitly gives "supervision and enforcement" of the Act to the director of the division of finance. *See* Mo. Rev. Stat. §§ 443.703.1(6), 443.729. More specifically, the Act provides that "to ensure the effective supervision and enforcement of Sections 443.701 to 443.893, the director may" deny, suspend, revoke, condition, or decline to renew a license; may order restitution; impose fines; order or direct persons to cease and desist harmful activities; enter immediate temporary orders; and "[o]rder or direct other such affirmative action as the director deems necessary." Mo. Rev. Stat. § 443.729.1. Since the legislature has provided a means of enforcement and has not created a private cause of action, and because there is no implication in the statute of a private right of action, plaintiffs have not demonstrated their ability to bring suit under the SAFE Act. *See Shqeir*, 636 S.W.2d at 948–950 (concluding that because the legislature had established a means of enforcement of chapters 374 through 379, the violation of Mo. Rev. Stat. § 379.118 did not give rise to a private cause of action); *R.L. Nichols Ins., Inc.*, 865 S.W.2d at 667 ("Because the legislature has provided a means of enforcement for a violation of [Mo. Rev. Stat.] § 375.035 and has not created a private cause of action for the violation of that section, the court properly sustained the motion for judgment on the pleadings"); and *Johnson*, 885 S.W.2d at 336–37 (affirming dismissal of action under child support statute where the statute had "an express provision authorizing the Director of the Division of Child Support Enforcement to

enforce the statute," and where there was "no clear implication that a private cause of action was intended").

For these reasons, plaintiffs' claims against Rushmore and BOA under the SAFE Act must be dismissed.

## G. State Law Claims Against BOA and Rushmore Under the Missouri Merchandising Practices Act

The Missouri Merchandising Practices Act (MMPA) "provides a private right of action to any person who sustains ascertainable loss in connection with the purchase or lease of personal, family, or household merchandise as a result of practices the MMPA declares unlawful." *Tucker v. General Motors LLC*, 58 F.4th 392, 396 (8th Cir. 2023). In other words, "[t]o establish a claim under the MMPA, a plaintiff must show that she (1) leased or purchased a product or service from defendant; (2) primarily for personal, family, or household purposes; and (3) suffered an ascertainable loss of money or property; (4) as a result of an act declared unlawful by" Mo. Rev. Stat. § 407.020. *Toben v. Bridgestone Retail Ops., LLC*, 751 F.3d 888, 897 (8th Cir. 2014).

According to the terms of the MMPA, unlawful practices include the use "of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce." Mo. Rev. Stat. § 407.020.1; *see also Vitello v. Natrol, LLC*, 50 F.4th 689, 691 (8th Cir. 2022). "Merchandise" is defined as "any objects, wares, goods, commodities, intangibles, real estate or services." Mo. Rev. Stat. § 407.010(4). With regard to the interpretation of the MMPA, "[t]he terms of the statute are unrestricted, all-encompassing and exceedingly broad." *Schulte v. Conopco, Inc.*, 997 F.3d 823, 826 (8th Cir. 2021); *see also Ports Petroleum Co., Inc. of Ohio v. Nixon*, 37 S.W.3d 237, 240 (Mo. banc 2001) ("For better or worse, the literal words [of the MMPA] cover every practice imaginable and every unfairness to whatever

20

degree"). Ultimately, this broadness "requires courts to make case-by-case determinations of whether a defendant's conduct violates principles of fair dealing." *Hawkins v. Nestle U.S.A., Inc.*, 309 F. Supp.3d 696, 701 (E.D. Mo. 2018).

Here, plaintiffs have alleged sufficient facts against Rushmore and BOA under the MMPA to survive initial review. They have asserted that both defendants used "various tactics, including consistent delays, to lure [them] into a forbearance." According to plaintiffs, they did not need or want this forbearance, but were convinced to enter into it, causing them harm. The Court must accept these allegations as true, and make all reasonable inferences in plaintiffs' favor. *See Jones*, 915 F.3d at 499. As such, the Court will direct the Clerk of Court to issue process on defendants Rushmore and BOA as to plaintiffs' claims under the MMPA. The Court cautions plaintiff that this is only a preliminary determination based solely on the allegations contained in the complaint. This is not a determination of the merits of his claim or potential defenses thereto.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' claims against defendants U.S. Bank National Association, U.S. Bank National Association, as trustee, U.S. Bank Trust National Association, as trustee, U.S. Bank National Association, in any capacity, SouthLaw, P.C., U.S. Bancorp Center, Bank of America Corporate Center, and the Saint Louis Metropolitan Sewer District are **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of partial dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that plaintiffs' claims against defendants Rushmore Loan Management, LLC and Bank of America, N.A. under the False Claims Act, the Missouri Secure and Fair Enforcement Mortgage Licensing Act, Mo. Rev. Stat. §§ 285.530, 428.010, and 506.020

are **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of partial dismissal will be entered herewith.

 **IT IS FURTHER ORDERED** that the Clerk of Court shall issue process or cause process to issue on defendants Rushmore Loan Management, LLC and Bank of America, N.A. as to plaintiffs' claims under the Real Estate Settlement Procedures Act, the CARES Act, and the Missouri Merchandising Practices Act.

 **IT IS FURTHER ORDERED** that an appeal from this order of partial dismissal would not be taken in good faith.

 Dated this 19th day of May, 2023.

MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE